## Commonwealth v. Allen.

*Henry S. Barker*, amicus curiæ; *Geary & Rankin*, for defendant.

MACDADE, J., December 16, 1930.—"If any husband or father, being within the limits of this Commonwealth, shall hereafter separate himself from his wife or from his children, or from wife and children, without reasonable cause, and shall wilfully neglect to maintain his wife or children, such wife or children being destitute, or being dependent wholly or in part on their earnings for adequate support, he shall be guilty of a misdemeanor; and on conviction thereof be sentenced to imprisonment not exceeding one year, and to

pay a fine not exceeding one hundred dollars, or either, or both, at the discretion of the court; such fine, if any, to be paid or applied in whole or in part to the wife or children, as the court may direct.

"Provided, That no such conviction, payment of fine, or undergoing imprisonment shall, in any manner, affect the obligation of any order for support theretofore made against the defendant in the court of quarter sessions, in the manner now provided by law: And Provided further, That upon conviction, the court may suspend sentence, upon and during compliance by the defendant with any order for support theretofore made against him, as already made or as may thereafter be modified, in the manner now provided by law; and if no such order shall have been made, then the court trying the defendant may make such order for the support by the defendant of his wife and children, or either of them, which order shall be subject to modification by the court on cause shown, and may suspend sentence, upon and during the compliance by defendant with such order then made or as thereafter modified and entry of bond by defendant, with surety approved by the court, conditioned on compliance with such order."

The above is quoted verbatim from the Act of March 13, 1903, P. L. 26, section 2.

This is a cumulative remedy to a prosecution for desertion of a wife under the Act of April 13, 1867, P. L. 78: Com. *v.* Hilton, 21 Dist. R. 422; Com. *v.* Rudy, 29 Pa. C. C. 450; Com. *v.* McCloskey, 23 Dist. R. 1114.

The Act of April 13, 1867, P. L. 78, section 1, provides: "That in addition to the remedies now provided by law, if any husband, or father, being within the limits of this commonwealth, has, or hereafter shall, separate himself from his wife, or from his children, or from wife and children, without reasonable cause, or shall neglect to maintain his wife, or children, it shall be lawful for any alderman, justice of the peace, or magistrate, of this commonwealth, upon information made before him under oath, or affirmation, by his wife, or children, or either of them, or by any other person, or persons, to issue his warrant to the sheriff, or to any constable, for the arrest of the person against whom the information shall be made, as aforesaid, and bind him over, with one sufficient surety, to appear at the next court of quarter sessions, there to answer the said charge of desertion."

This act is not repealed by the Act of 1903, *supra,* except so much as relates to the definition or description of the offense of desertion: Com. *v.* Mills, 26 Pa. Superior Ct. 549; Com. *v.* McCoy, 81 Pa. Superior Ct. 191; Com. *v.* McCaffrey, 9 Northampton L. J. 373.

An order of support under the Act of 1867 does not prevent the prosecution of the defendant for a misdemeanor under the Act of 1903, the remedy being cumulative and the object of the act to prevent his discharge under the insolvent laws: Com. *v.* Hilton, 59 Pitts. L. J. 404.

If the defendant can be reached by "warrant," it is sufficient to give the court jurisdiction: Com. *v.* Shetzline, 84 Pa. Superior Ct. 100; Com. *v.* Brook, 93 Pa. Superior Ct. 282.

The Act of 1867, *supra,* is intended for the relief of deserted wives and children: Com. *v.* Hawkins, 25 Dauph. 477, affirmed in 80 Pa. Superior Ct. 520. See, also, Philadelphia *v.* Miller, 42 Pa. Superior Ct. 471.

Section two of the Act of 1867, *supra,* provides, *inter alia,* for the procedure, which is as follows: "The information, proceedings thereon, and warrant shall be returned to the next court of quarter sessions [or other court having jurisdiction thereof] when it shall be lawful for said court, after hearing, to order the person against whom complaint has been made, being of sufficient ability, to pay such sum as said court shall think reasonable and

proper, for the comfortable support and maintenance of the said wife, or children, or both, and to commit such person to the county prison, there to remain until he comply with such order, or give security, by one, or more, sureties, to the commonwealth, and in such sum as the Court shall direct, for the compliance therewith."

While, prior to the Act of 1903, *supra*, it might be stated with reasonable certainty that statutes providing for orders of support in desertion proceedings were remedial in their nature and not penal, and the act of desertion did not constitute a legal crime within the meaning of article IV, section 2, of the Constitution of the United States, relating to extradition, nor within the statute of limitations in relation to crime, yet it was so far criminal that a defendant could not be compelled to testify against himself: Extradition Case, 9 Pa. C. C. 27; Com. *v.* Kerbey, 8 Dist. R. 671; Delaware County Directors of Poor *v.* Mercer, 2 Clark 75; Com. *v.* Reed, 5 Dist. R. 57.

Again, the Act of 1903 makes it a misdemeanor for any husband or father, being within the limits of this Commonwealth, to separate himself from his wife or from his children, or from wife and children, without reasonable cause, and to willfully neglect to maintain his wife and children, such wife being destitute or being dependent wholly or in part on his earnings for adequate support.

Under this act, for the causes aforesaid the procedure is exclusively by information and the proceedings thereon, and the warrant shall be returned to the next court of quarter sessions, or other court having jurisdiction, when it shall be lawful for the court, after hearing, to order the person against whom complaint has been made to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both.

This act has since been amended with respect to the return of the warrant, and the latter can only issue upon information made before an alderman or justice of the peace, under oath or affirmation by the wife or children, or either of them, or by any other person or persons, said warrant being directed to the sheriff or to any constable for the arrest of the person against whom the information shall be made as aforesaid, and to bind him over, with one sufficient surety, to appear at the next court of quarter sessions (now amended to require him to appear forthwith); there to answer the charge of desertion and nonsupport.

The Act of 1867 is amended by the Act of April 27, 1909, P. L. 260 (19 PS, §§ 27, 28), so that the return to a proceeding for nonsupport may be made immediately to the court of quarter sessions without waiting for the next term: Philadelphia *v.* Dezsi, 56 Pa. Superior Ct. 414.

And a defendant may now plead guilty to certain offenses without the formal finding of a true bill by the grand jury upon the presentation of an indictment by the district attorney, after the transcript of the proceedings before the alderman or justice of the peace, after information upon oath or affirmation and the issuing and service of the warrant, has been returned to the court of quarter sessions or other court, as the case may be: Com. *v.* Hart, 12 Pa. Superior Ct. 605; Barnes *v.* Com., 11 W. N. C. 375.

"No warrant . . ." under our Constitution, article I, section 8, "to seize any person . . . shall issue . . . without probable cause, supported by oath or affirmation subscribed to by affiant."

Criminal prosecutions are begun and carried on to trial by several methods, and such trial for crimes (felonies and misdemeanors) is "by an impartial jury of the vicinage," a petit jury of twelve of his peers. This right of trial by jury is secured to him by the Constitution, article I, section 9.

The methods are five in number, namely:

1. By arrest, with or without a warrant; a hearing by a committing magistrate and a return by him to the proper court, followed by an indictment by the grand jury.

2. Upon presentment by the grand jury followed by an indictment.

3. Upon the district attorney's preferment of certain charges to the grand jury followed by an indictment.

4. Upon a hearing and commitment by the coroner followed by an indictment by the grand jury; and

5. Upon information filed by the district attorney.

In the instant case, this defendant, on or about October 11, 1930, being represented by an attorney, met his wife, who was also represented by an attorney, in the office of our probation-desertion officer, Henry S. Barker, and it is alleged voluntarily entered into a written agreement of support of his said wife and child, to pay the sum of $25 per week for their support and maintenance. It is alleged, also, he entered a plea of "guilty" to an indictment charging desertion and neglect to maintain his wife and minor child, said indictment being prepared by said officer without authority or even knowledge of the district attorney. There had been no previous information under oath or affirmation lodged against the defendant before an alderman or justice of the peace of the County of Delaware, with proceedings thereon, together with the issuing of a warrant, with service thereof and return to our court of quarter sessions for a hearing by the said court.

The defendant defaulted immediately in his payments under the written agreement of support and at the request of the said probation-desertion officer, one of the members of the court allowed a bench warrant to issue for the arrest of the defendant. He was apprehended and brought before us at our regular desertion court for a hearing upon a contempt charge or at least for a failure to comply with the terms of the said written contract (which was purely a civil contract and only enforceable in our civil court as any other debt is enforceable at common law for breaching the terms of a contract). Another attorney represented him before us and immediately presented a petition to vacate the order of this court, this court having formally made an order based solely upon the written contract entered into under the circumstances aforesaid. Both the order for support and the order to issue the bench warrant for contempt were undoubtedly made under a misapprehension and upon the request of the said probation-desertion officer who had not been fully advised of the legal steps to be taken in order to have this defendant properly before the court for a hearing and subsequent order for support.

This petition to vacate the order was responded to by the wife, through her attorney, stating, *inter alia*, that defendant had not been theretofore deceived, as he alleged in his petition, into executing a separation agreement, but that he fully knew his legal rights, was fully informed as to the contents of the paper and voluntarily executed the same.

However, this cannot help us but to reiterate that it was a contract, perhaps enforceable in the civil court, for how can this court assume any jurisdiction of the defendant to make a formal order of support, to be followed by an order of arrest for contempt of such order when the acts of assembly expressly and exclusively provide the criminal procedure? The superstructure falls because there is no sound basic foundation or legal structure to support such proceedings in accordance with the law in such cases made and provided: Com. *v.* Friedlander, 53 Pa. Superior Ct. 221; Com. *v.* Dezsi, 56 Pa. Superior Ct. 414.

There must be an information or complaint for an order of support and couched in words which have substantially the same meaning: Com. *v.* Friedlander, 53 Pa. Superior Ct. 221; Com. *v.* Dudley, 29 Dist. R. 175.

In proceedings under the Act of 1867 for an order of support, if defendant can be reached by warrant, it is sufficient to give the court jurisdiction. It necessarily follows this court had no jurisdiction for the order herein for no warrant was issued based upon information: Com. *v.* Shetzline, 84 Pa. Superior Ct. 100; Com. *v.* Plummer, 83 Pa. Superior Ct. 26.

Some excuse is offered as a palliative by referring to the practice before the domestic relations court in Philadelphia. There they follow, it is alleged, an act of assembly pertaining exclusively to Philadelphia County and the Municipal Court therein, but that does not justify such a course to be pursued here without legislative authority. Unless the legislature, if it has the power to do so, changes the procedure in desertion and nonsupport cases, as the law presently exists, the practice of the probation-desertion officer sending for a husband upon the oral or written complaint of a complaining wife or children who may visit his office, however worthy the call, and when he responds voluntarily (and it could not be otherwise) to dicker with him to enter into an amicable written agreement of support or else be formally charged with nonsupport and arrest, savors too much of coercion and duress, apart from its illegality, and the authority of the court to conduct a hearing, as the law provides, and determine the facts and make such an order as law and justice demand, is usurped by such an officer. This authority cannot be delegated by us to any person, especially to anyone who is not learned in the law. Such a practice, if established, and without authority of the law, and in the control of unworthy hands could very readily degrade into an instrument for sharp practices, harsh treatment, duress and coercion and for public disorder and scandal and parallel in direful effect that which followed the Star Chamber proceedings or the Spanish Inquisition.

We have efficient probation-desertion officers at present whose superiors cannot be found here or elsewhere, but we shall not condone such a practice so very recently inaugurated and lull ourselves into a state of security when we would go contrary to the legislative mandate and set ourselves up as autocrats in devising judge-made law, which is in itself a pernicious practice and pregnant with evil manipulation to the detriment and prejudice of proposed defendants who are not being dealt by squarely in depriving them of the benefits and privileges of an American citizen whose rights under the Constitution and the laws of our land are guaranteed to him wherever he may be and whatsoever his race, condition and creed.

This is a dangerous practice also because if this written contract can be construed as a "separation" agreement, as defendant contends, it would be a bar to any proceedings commenced by the wife to compel her husband to support and maintain her, if all the terms of the agreement were carried out in good faith: Com. *v.* Richards, 131 Pa. 209.

See Endlich on the Rights and Liabilities of Married Women, 265, § 219, wherein this feature of the case is discussed, to the effect that where an agreement is made and bond given by a defendant to prosecutrix for support, the case is taken out of the jurisdiction of the court of quarter sessions and becomes a civil remedy and the performance of said agreement can only be enforced by a civil remedy. If such be a deed of separation, or so construed, it is a bar to the proceedings under the Act of 1867, if actually carried into effect, and not avoided by the subsequent acts of the parties: Com. *v.* Richards, 131 Pa. 209; Com. *v.* Hollinger, 16 Pa. Superior Ct. 199.

In Com. *v.* Hayes, 18 Del. Co. 440 (Fronefield, P. J.), we had a case somewhat similar to the one at bar, assuming that the written contract herein was a "separation" agreement only, when we said that a wife claiming support from a husband is not barred from proceeding in the quarter sessions, under the Act of 1867, by an agreement whereby her husband agreed to pay her a specified weekly sum, if he has defaulted in his payment: Com. *v.* Hollinger, 16 Pa. Superior Ct. 199. The district attorney is the party to prosecute desertion and nonsupport cases and not the probation-desertion officer: Rotan's Petition, 23 Dist. R. 110.

When the Act of April 13, 1867, P. L. 78, was passed, to the effect that any alderman, justice of the peace, etc., could issue a warrant for a deserting husband, etc., upon the information of any person, which should be returnable to the court of quarter sessions, a radical departure was effected in the method of procedure in such cases. It then became the duty of the district attorney to prosecute the cases. Especially was this so in view of the provisions of the Act of May 3, 1850, P. L. 654, creating the office of district attorney. The language referred to is as follows: "The officer so elected [District Attorney] shall sign all bills of indictment, and conduct in court all criminal or other prosecutions in the name of the commonwealth, or when the state is a party, which arise in the county for which he is elected."

Even if the law were such as to permit prosecutions in our court of quarter sessions without preliminary hearings and, therefore, no occasion longer for informations, warrant or proceedings before the magistrate, or recognizances taken by him, as is the case in the Municipal Court in Philadelphia under the Act of July 12, 1913, P. L. 711, yet such agreement should not be entered into by a probation-desertion officer, for it is the exclusive business of the district attorney to prosecute such matters in the court of quarter sessions as he does in the Municipal Court in Philadelphia County. The Municipal Court institutes the "prosecution" and the district attorney represents the Commonwealth and prosecution. For in "Words and Phrases Judicially Interpreted," it is said: "To prosecute a suit is, according to the common acceptation of language, to continue a demand which has been made by the institution of process in the court of justice."

In Bouvier's Law Dictionary, "prosecution" is defined as being the following up or carrying on of a judicial proceeding; and, in a stricter sense, the carrying on of a judicial proceeding on behalf of a complaining party, as distinguished from defense; and in the strictest sense, the carrying on of a criminal proceeding on behalf of the state or government, as by indictment or information.

We think that the word "prosecution" should not be used in the strictest sense, but merely to indicate the following up or the carrying on of an action or other judicial proceeding. Indeed, this is the interpretation put upon the word by the legislature itself, for the Act of 1850 specifically refers to "criminal or other prosecutions," indicating that in the legislative mind there would be cases of other than a criminal nature of which the district attorney should take charge.

Consent cannot confer jurisdiction in a criminal proceeding nor can it empower the court to act upon subjects which are not committed to its determination and judgment by law.

The law creates courts, and, upon consideration of public policy, defines and limits their jurisdiction and the manner in which it should be exercised; the courts cannot do differently. There is no authority in the law to give what is a jurisdictional matter, and for the court's exclusive consideration and determination, to a subordinate officer of the court, and the consent of the defend-

ant cannot change this situation. The officer has no jurisdiction vested in him in the absence of specific legislation. It is unthinkable that such officer shall pass upon the guilt or innocence of the husband, or even that of the wife to support a husband in view of recent legislation and decisions of the court. The court should conduct the hearing and not its officers: Act of May 14, 1925, P. L. 787, § 1012; Com. v. Hermann, 99 Pa. Superior Ct. 135; Com. v. Hall, 91 Pa. Superior Ct. 485.

If such agreement can be entertained in the manner as produced in the instant case, how are cases to be handled when there would be an application for a revocation or reduction of the order? Again, where is there a record to be reviewed by the appellate court when the Act of April 18, 1919, P. L. 72, requires a record to be made of the evidence taken on such a hearing (held by the court) ? See Com. v. Bednarek, 62 Pa. Superior Ct. 118; Com. v. Berardino, 100 Pa. Superior Ct. 58.

The authority to change a long-established manner of criminal procedure or modify the jurisdiction of the courts is vested in the legislature. The legislature has never changed the jurisdiction of the courts under the Acts of 1867 and 1903, except as hereinbefore stated, and conferred the same upon the probation-desertion officer of this county, even upon the express consent of the defendant, to vary the established criminal procedure: Van Swartow v. Com., 24 Pa. 131; Lavery v. Com., 101 Pa. 560; Com. v. Francies, 250 Pa. 496; Com. v. Andrews, 24 Pa. Superior Ct. 571.

It is contended that it would be convenient and save expense if such cases were disposed of in the manner pursued in this case. True, but it must be a court of quarter sessions, acting and speaking according to law.

Jurisdiction in courts is the power and authority to declare the law. The very word in its origin imports as much; it is derived from *juris* and *dico;* I speak by the law. And that sentence ought to be inscribed in living light on every tribunal of criminal power. It is the right of administering justice through the laws, by the means which the law has provided for that purpose.

The court of quarter sessions is a tribunal established by the Constitution, but the Constitution does not define its jurisdiction nor the powers vested in its judges. Courts are founded on express authority, and their duty is to hear and determine according to law. The power exercised in this case by the desertion officer of the court is not to be found based on any express authority, constitutional or statutory, nor in any express right of the prisoner to its exercise: Com. v. Mayloy, 57 Pa. 291.

In Com. v. Hall, *supra,* it was aptly said: "It has been held in states having constitutions similar to Pennsylvania that a prisoner may waive his right to a jury trial, if he chooses to do so and the Legislature has conferred upon the tribunal the jurisdiction to try cases in that manner, but the mere consent of the defendant cannot confer jurisdiction to try him upon any tribunal which has no such jurisdiction conferred by statute. Consent cannot confer jurisdiction in a criminal proceeding, cannot empower the court to act upon subjects which are not committed to its determination and judgment by the law. The law created courts and upon considerations of public policy defines and limits their jurisdiction and manner of its exercise. Until the Legislature provides some tribunal (or machinery) for the trial of crimes and misdemeanors, in courts of record, without a jury, the courts are without jurisdiction to assume such power: Cancemi v. The People, 18 N. Y. 128; Harris v. The People, 128 Ill. 585; Paulsen v. The People, 195 Ill. 507; State v. Maine, 27 Conn. 281; Murphy v. State, 97 Ind. 579; State v. Lockwood, 43 Wis. 403; The People v. Smith, 9 Mich. 193; Mays v. Com., 82 Va. 550;

738

Bond *v.* State, 17 Ark. 290; State *v.* Douglass, 96 Iowa 308; Com. *v.* Rowe, 153 N. E. 537 (Mass.)."

Therefore, holding unswervingly, as we do, that such an argument as is made herein, based on convenience, saving of time and money, is for the consideration of the legislature; that such arguments ought not to have weight with the courts and thus induce them to permit the probation-desertion officer to usurp judicial functions, we make the following order: And now, December 16, 1930, upon hearing of the petition to revoke the order of this court based upon consent of the defendant to enter into a written agreement of support in the office of our probation-desertion officer and at the latter's solicitation, without information based upon oath or affirmation or with proceedings thereon or the issuance of a warrant and a return by the alderman or justice of the peace, the court doth order and decree that the prayer of the defendant (petitioner) in said petition be and is hereby granted, the order or decree of October 11, 1930, be and is hereby revoked and the writ of attachment issued be and is hereby discharged.

From William R. Toal, Media, Pa.